## Rossi Estate

Before Sinkler, P. J., Klein, Bolger, Ladner, Hunter and Boland, JJ.

*Frank Carano*, for exceptant.

*Mortimer N. Eastburn* and *Herman H. Greenberg*, contra.

BOLAND, J., November 25, 1949.—A petition was filed by Jennie Cepparulo, an adult married daughter of decedent, for the allowance to her of the child's exemption from her mother's estate. The matter was contested by Pasquale Rossi, son of decedent and brother of petitioner, and residuary legatee under decedent's will.

The hearing judge found as a fact that decedent had lived in her house until October 15, 1947, when she went to reside with her daughter, petitioner, in a house owned by petitioner and the latter's husband. Decedent was living there at her death on October 18, 1948. He further found that the house was maintained by petitioner and her husband from their joint earnings; that these two with their children formed an independent family unit prior to the time decedent came to reside with them, and that this family unit was still maintained at the death of decedent. He concluded further that this case is one of decedent having come to live with petitioner and her husband, rather than petitioner forming part of the family of decedent, and found as a fact that petitioner did not form a part of the family of decedent at the time of the latter's death.

A finding of fact by an auditing judge that no family relationship existed between an adult married daughter of decedent and decedent at the time of the latter's

death has the effect of a verdict of a jury, and will not be disturbed except for manifest error: Roberts' Estate, 350 Pa. 467 (1944) ; Frank's Estate, 339 Pa. 499 (1940). We find no error in the hearing judge's conclusions. It is very evident from the testimony in the case that decedent was merely a guest in the home of the family of petitioner.

Counsel for petitioner, in the hearing before the court en banc, posed the question at issue as follows:

"Where a daughter claiming an exemption from her mother's estate is an adult, married and living with her husband; and decedent, her mother, resides in the daughter's home; and the daughter maintains a common table for the whole family, preparing and serving meals, doing the entire housekeeping, and nursing decedent, is the daughter a part of the family of decedent and is she entitled to a child's exemption of $500?"

It will be observed, therefore, that everyone is in agreement that the dominant and only question to be decided is the one involving the question of whether the daughter in this case formed a part of decedent's family. The facts are admitted, but the legal conclusion is disputed.

The Fiduciaries Act of June 7, 1917, P. L. 447, sec. 12(a), as amended, did not change the law as established prior thereto by the decisions interpreting the Act of April 14, 1851, P. L. 612. The Act of 1851 provided that the exemption (then $300) shall be "for the use of the widow and family". The Act of 1917 uses the expression "forming part of the family of any decedent". While there have been many cases that have established the right of a married adult daughter to the exemption, in every instance the facts established that the married daughter was living in the home of decedent. The family relation and residence with decedent, and not the dependence of the daughter, is the criterion of her right: Henkel's Estate, 13 Pa. Supe-

rior Ct. 337; Stevenson's Estate, 23 Dist. R. 747; Hoffman's Estate, 11 Dist. R. 552; Lane's Estate, 6 Dist. R. 618; Young's Estate, 3 Dist. R. 758; Halbe's Estate, 20 Phila. 117.

In Hook's Estate, 3 D. & C. 692, decided by this court, it was held that the family relationship did not exist, and the claim by the daughter for the exemption should be disallowed. It was pointed out in this latter case that the dominant fact is that claimant should form part of decedent's family, and the facts in the case show that while decedent father for many years prior to his death had spent his time between the residence of claimant, his married daughter, in Philadelphia, and a farm that he owned in New Jersey; that within a year of his death he stopped paying the rent for the Philadelphia property and that claimant and her husband took on the obligation of the rent, together with all other expenses, which latter they had paid all the many years that decedent had spent with them. It was found as a fact that during the last year of his life he lived with claimant as her guest.

This court decided in Andrews' Estate, 30 D. & C. 271, that claimant, a married daughter, was not entitled to the exemption, although she and her mother had lived together all their lives, until both were taken to a hospital, from which the mother was transferred to another hospital, where she died; that the adult daughter, upon discharge from the hospital, returned to the apartment where she and her mother had lived, and that about two weeks prior to the mother's death she married, continuing to reside at the same place with her husband. This was held to be sufficient to sustain a finding by the auditing judge that no family relationship existed between the mother and the daughter at the time of the mother's death, the relationship having been severed by the act of marriage.

The exemption act contemplated immediate relief for a sudden emergency, and it was necessary to broaden the coverage and not make it contingent on dependency. Clearly, however, it was intended to assist a particular class, namely, widow and children who were part of decedent's family and might need financial help during administration: Lane's Estate, 6 Dist. R. 618 (pp. 620-621).

An appropriate definition of "family" would be that as set forth in Webster's International Dictionary: "A group comprising immediate kindred, esp. the group formed of parents and children, constituting the fundamental social unit in civilized societies."

In the instant case it is our firm conclusion that decedent was merely a guest in the "family" of claimant.

The exceptions to the decision of the hearing judge are dismissed.